For those of you who were not here in the first pair of cases, there are obviously just two of us on the bench. Justice Cates is also on the panel due to circumstances beyond her control. She is not able to attend court today. She will be a full participant in the conferencing and decision-making and disposition of the cases that are heard on the entire docket today. So, with that clarification, I believe the next case called for oral argument is Design Concrete Foundations v. Erie Insurance. Counsel, whenever you're ready, you may proceed.  My name is Tom Burkhardt, and I represent Gordon Valiable, who is the president of Design Concrete Foundations, Inc. To introduce my client, I recall reading legislative histories recently when they were amending the Mechanics Clean Act. There was a state senator, I forget his name now, but he referred to the need to protect a contractor known as Joe Sixpack. That's my client. My client is a concrete foundation man. He's the one that builds the basements that the houses are built on top of, and that's all he does. He doesn't do the subfloor. He doesn't do any other construction. He just pours the foundation, the concrete foundation. He went to his insurance agent and said, I need coverage for my job, for what I do, so that if anything happens where I might be found liable, that I'm going to be covered. This is a coverage dispute, and under the circumstances, my client was sued mainly because the general contractor in the case went bankrupt. And there's a quirk in the law that says under those circumstances, the owner, if he has a complaint about defects with the house, can sue the subcontractor. Now, Erie Insurance was the insurance company, and Erie Insurance denied coverage, period. They chose the most risky avenue in this case. They didn't afford pepper's counsel. They didn't reserve rights. They simply said, you're not covered at all. A little bit of background. When I first got into the case and I interviewed my client, he didn't have a copy of his policy. And you know how these guys are. They usually keep everything in a shoebox somewhere. Well, his office was in worse chaos than the office before. But in any event, so I asked for a copy of the policy to Erie. And all I received was the Commercial General Liability Policy. Now, that's form number CT0001. That is a form that's published and copyrighted by the Insurance Service Organization, ISO is what it's called. And Erie completely endorsed and adopted the ISO's form, and they used it. And that was the only policy I was given. Well, after a while, maybe six months into the case, my client discovered this huge notebook that he had that had all his policies in it. And come and lo and behold, there were several policies, endorsements, which changed the CGL and afforded higher coverage. We took the deposition of the insurance agent, A. Eric Kalisa. And that was offered in court to defeat the summary judgment. And in that deposition, Eric Kalisa talked about how the endorsements increased the coverage. They changed the CGL. So Erie's initial representation that all you have is a CGL was disputed and was wrong. And so he said Eric's statement was that, you know, this would cover damages to your work and your work product arising out of your operations. And that's the endorsement. I think the form number is FS0003, I think. So we have that testimony out there saying it's covered. He also testified that in addition to the general liability coverage, that my client had paid for an umbrella policy. Eric Kalisa's sworn testimony was that under the umbrella policy, the insurance company has to provide a defense even if there's no coverage afforded under the underlying policy. So there was that testimony, which created a fact question, if you ask me. But when you get right down to the crux of the matter, I have a two-part argument I want to make. First of all, Mr. Steinken, we took his deposition testimony. He's the author of the denial letter. He's also the claims adjuster in the case. He basically testified, I didn't look outside the four corners of the complaint. I based my decision on the complaint and only the complaint. He also testified, and this is extremely critical, he said, you know, if I would have been advised or known that the damage to Mr. Blythe's work, the designer's work, was caused by another contractor, there would have been coverage. I didn't look at that. I did not investigate that. And that's all cited in the brief exactly to the record where he was testifying to it. His entire deposition was submitted to the court for consideration to show that, you know, hey, there's coverage here. So my two-point argument is let's look at the underlying complaint, because I think there's enough in the underlying complaint to bring the case potentially within coverage. In other words, an insurance company can't just sit idly back and say, oh, well, the complaint doesn't say what's covered. I believe the law is that if there's an allegation in the complaint that shows, you know what, there might be coverage here, the insurance company has a duty to investigate further. They didn't do that. Admittedly, they didn't do that. Paragraph 10 of the underlying complaint alleges as follows. I have to repeat that because that's extremely important. After the concrete foundation, after my client's work was done, he's off the site. He's gone. That allegation alone, well, then it goes on to say cracks formed in said concrete foundation which allowed water to enter the basement of said residential home and have caused inward movement of said foundation. Caused by what? Not my client. He's off site. That allegation alone was enough to alert here an appropriate claims adjuster that, hey, guess what? There might be something out there that caused this inward movement that wasn't my insurer. I better look into that. Well, if that's all there was, so my first argument is the underlying complaint is enough. We don't need to look outside the four corners. It's enough to contain allegations that there should have been coverage before. One. The second part of my argument is going to be that they had a duty to look outside the four corners of the complaint because I told them about what happened. I sent a letter to them. I sent a letter saying, hey, I've talked to my client. Here's some additional information. In fact, their denial letter basically says if you have any additional information that can cause us to reconsider this, let us see it. I did. I sent them a letter. You referenced discovery done before the summary judgment was entered. Was that information given to the court before the defendant was granted summary judgment? Yes. Everything was presented to the court, and the deposition should be in the record because the complete depositions were filed with the court. So in any event, I sent them a letter. And I said, you know, my guy only does the foundation. Somebody else, another subcontractor, backfilled too prematurely where the subfloor wasn't on, which gives more strength to the foundation. Where the subfloor wasn't on, and he backfilled, and that's what pushed in the walls. They ignored that. I don't think they're allowed to ignore that. Now, defense counsel will cite a couple of cases out of the second district that suggest, well, you can look outside the complaint. You're just not allowed to look at anything that the insurer examines. Well, I think that's a direct contradiction to what Justice Stewart wrote for this court in the Pekin v. Wilson case. He said it doesn't matter from what source. Hold on a minute. And I'll quote it. He wrote, in the Wilson case, that was a case where only intentional conduct was alleged in the complaint. But the defendant raised as an affirmative defense, self-defense. And there was an exception in the policy that said, you know, we don't cover intentional conduct. That's common. But if it's in self-defense, we do. And in the Wilson case, Justice Stewart wrote for this court, I think it was a 2009 case, but he wrote that regardless of the manner in which the self-defense facts were raised, the child court should have considered those facts. So the second district and the fifth district are a little bit opposed to each other right now. I submit that the court was supposed to follow the fifth district. And that they should have considered the fact that the insurance company knew, by virtue of my letter to them, that the damage was caused by somebody other than my client. Well, let me stop you there. Let's put aside your letter. Do the depositions indicate the factual argument that your letter articulates to the insurance company? Steichening's deposition, I believe, does. Because I asked him directly about the letters. And he basically said, acknowledged that he received them. I think that's the answer. No, it's not. Let me rephrase it. The substance of your letter, as far as the actions or omissions of another contractor being the basis of this, and that's evidenced by the facts you alleged or complained, is that articulated in any of the depositions or other discovery that was submitted to the court prior to the court ruling on the motion for summary judgment? To be honest with you, I'd have to check the record. The only place I think it was addressed was they propounded interrogatories to my client. And my client answered those interrogatories, setting forth the factual basis there. Did I depose the general contractor gone bankrupt? No. Did I depose the subcontractor we believe did the backfilling? No. So that's missing. But my client's sworn answers raising these factual issues, I believe. But I can't say for sure. But I would look at the record and look at the fact. I'm not sure that that'd be part of the record. I'd like to supplement and provide you copies, because you know the rule is you keep discovery outside of the record. Right. We'll grant you leave to file a motion to supplement, and we'll grant you leave to respond to that motion to supplement. Okay. Does that answer the question? Yeah, it does, actually. Okay. All right. So. So following up on my argument here. The. If Steinlein's deposition said, and he says under oath, if he would have known that the damage was caused by another subcontractor, there would have been coverage. He should have investigated to determine whether or not that was based upon the allegations in the underlying complaint that I just read to you. He didn't do that. And he admitted he didn't do that. Now. I submit, as I said, that coverage should have been afforded under the general liability policy. And I want to address the issue of the ISO interpretation of that policy. There's a court case from this district called Tillerson. And to address that issue, I'd like to pose, I guess, a question, if you will. It dawns on me that there's probably many times that a judge sits in a case and he isn't presented with all the facts that the cases that are out there available. And he's sitting there later on, finds out something that says, gee, if I would have known that, I think I would have changed my mind. I submit to you that's what happened in Tillerson. This way, this defense that there's no occurrence when there's a defect in the contractor's work has been rebutted ever since the Florida Supreme Court case that I cite in my brief. And more and more cases, states are looking into this ISO documentation saying we intended to give coverage. We charged a premium for this coverage. What is the definition of occurrence you have? Well, I mean. What is the defined as the word occurrence? It's an accident. Okay? And then the accident, I don't think, is defined in the policy. But I briefed that issue, and frankly, I think the Fifth District's policy to the Supreme Court that an accident is something that's unforeseen. In fact, I think there's a case that I cite in the brief where you sit there, the court reasoned that you don't look at whether or not the action that caused the result was intentional. It might have been. You look at whether or not the result was the intended result, and if it's not, then it's accidental. And that's what the law in the state of Illinois is. I don't remember the name of the case, but I've cited it in the brief, and I believe that to be logical. In this case, there's like the Carr case. I cite the Country Mutual versus Carr case, a Fourth District case. In that case, it's almost identical to this case. A country foundation person was sued, and the basement cracked or whatever, and it was caused by the backfilling. And the court reasoned in that case, well, the concrete foundation guy didn't intend his basement to fall apart. He didn't intend somebody with a bulldozer to push a ton of dirt into it and have it crack and push forward. That was not his intent at all. Therefore, it was an accident, and I believe that is the case in this case, and I think that's basically. I also believe that the Carr case has been. I really don't know how to deal with this because I found it. A third-party case in Carr, Carr versus Country or Vogel saying or something like that, and it's published in the Northeastern reporters, but it's not published in the official reporters, but it's a pretty good opinion, and it affirms the Fourth District's Carr case. It says we, the appellate court, ruled that there was coverage. We refused to review it on a PLA, and therefore, that's good law. And I believe that's what the court was looking at at the time and said, yeah, this is the way to go. Because if you look at the court's review, the Supreme Court's review of the Wilson case, Pekin versus Wilson case, they affirm this court's decision in that case, and I believe that they were basically saying the same thing about an accident. If it's not intended, then it's an accident, and it should be cut. I was getting on to the – and I guess I should address the – I know the court knows the standard for summary judgment. I believe, and I've submitted to you, facts that are contained in the record which say there are issues of fact in this case. We should not have had this going down on summary judgment. As the case goes forward, or goes forward, I have actually found out how this whole system works, and I cite that in my reply brief. It talks about the requirements of an insurance company to file with the Department of Insurance, and they can – the – one place in the discovery where it is in the record, the area insurance admitted to a request room, in fact, that it was a subscriber to the ISO at the time that it was issuing these policies. You can kind of tell that from the policy because they adopt the ISO's formula, CG0001. If you look at the law as it applies to insurance companies, and I wasn't smart enough to find this on my own. I actually have another case that's like this, and I found – I actually found the author of that circular from the ISO, and he told me that this was the intent of the industry, and he said, here, look at this Illinois law. It says this is where they have to – the insurance companies actually have to tell the department, these are the forms we're going to use. Then the department gets to review those forms. If the form doesn't ensure the risks that the department approves, don't eject the form. Now, if you adopt – if you're a subscriber to the ISO and you adopt their form, it's clear that, although we don't have because we got knocked out of court, that the form RF1 referred to in the Code of Regulations, the Illinois Administrative Code, Chapter 50, Section 753.10, all that's referred to in my reply brief. It's clear that by adopting the ISO submissions, the company adopts their interpretation. Thank you. But I'm out of time, so. Thank you. Another five minutes after this? Yes. Okay. If we support, Your Honor, Counsel, my name is Dan Hasenstab. I represent the defendant, the appellee, Erie Insurance, in this case. First, I want to address some of the arguments that Mr. Burkhart made in his argument. First of all, he said twice regarding the deposition of Tim Steiknik, the insurance representative from Erie. He – I don't know if he's quoting or paraphrasing here, but he says that he represents Mr. Steiknik's testimony saying, if I had known damage was caused by another contractor, there would have been coverage. That testimony doesn't appear anywhere in the deposition. If he's quoting, he's completely misrepresenting what's in there. If he's paraphrasing, he's taking an extremely liberal and incorrect version of what actually is testified. The deposition testimony, I feel so, the court does not include it in the appendix, but it's in the court record. And I would advise the court to check the deposition testimony themselves and see if he actually makes the representations that Mr. Burkhart has said here today. What about the – his client's answers in the Rocketory? I don't recall his client making any answers in the Rocketory's cons with you, Your Honor. I could be incorrect about that. Well, we'll have to – Right, we'll have to – Motion to supplement in your response. I would like to respond to that, actually, Your Honor. I believe the question that you had posed was whether this information, which we believe are just suppositions, that Mr. Burkhart made in his letter to the hearing about – that the damage was caused by this other contractor, A.L. Construction and Sons. And that does – that appears as an allegation in one of the two letters that he sent to hearing insurance before client coverage was denied. What I would suggest, Your Honor, to the extent that any such information or evidence that has come out since this suit was filed is completely irrelevant, and not a formative basis as to the coverage decision in this case. Since coverage was denied, and his claim was filed as a breach of contract, saying we are hearing refused to – improperly refused to defend the case. So to the extent that there is evidence, but I honestly don't believe there's any other evidence aside from these letters that indicate that A.L. Construction caused the damage. But to the extent there is, I believe it would be irrelevant because it did not – Were your clients ever paid $2,000 to him? No. They were not identified as well. Okay. They determined there was no duty to defend based on the allegations in the complaint, based on the policy language. They denied the claim, and they were not given any further information until the suit was filed, saying the contractor had been breached. So they didn't offer a defense under reservation rights. It just flattened out. That's correct, Your Honor. And to contradict what Mr. Burkhardt said earlier, when there's no duty to defend – I mean, when it's clear in the face of the complaint, based on the policy language, there's no duty to defend. You don't have to defend under a reservation. You defend under a reservation where there may be some allegations that are covered. Some are not covered. You defend. You say there's some that's covered here. There's some that might be covered. We're going to reserve the rights on those non-covered issues. That's not the case here. There was no duty to defend triggered by the complaint, by the insurance policy. So here is proper and denied coverage for this case. Also, Mr. Burkhardt talks about, in an effort to defeat summary judgment in this case, to create a question of fact, this deposition testimony of Eric Kalisa, who's actually an agent of his client, Design Concrete, not an agent of your insurance. And Eric Kalisa clearly said during his deposition, I do not make any coverage determinations. I'm an insurance agent. I cannot interpret the policy for you. And he does not state in his deposition, he does not give any policy interpretation, any interpretation of any language. Well, first of all, to the extent he would, it wouldn't be binding here if he's not an agent of your insurance. Second of all, he clearly says that's outside my realm. So anything that Eric Kalisa said would not create a question of fact as to interpretation of the policy. Would anything that he would state as to the underlying factual situation of this incident, whether you call it an accident occurrence or not, that would be relevant, though, to the determination of whether a summary judgment should be granted with him. As to what happened with regards to the damage itself? Yes. I don't believe that because, well, first of all, he doesn't offer any such testimony. His testimony is only about what policies were in place at the time. And I do agree with Mr. Burkhardt that there was some confusion initially as to what policy forms were actually in effect at this time. And that was actually clarified by Mr. Kalisa, who said that initially Eric had a hit, that his client had a five-star, what's called a five-star contractor's policy with Eric. And that was canceled because a business had grown beyond what would cover a policy. And it was replaced with what was called an ultra-flex policy. And Mr. Kalisa's testimony was actually helpful to the extent that it clarified what particular policy forms were in place. It was an ultra-flex policy and also a legal-browl policy. And also to the extent that, I mean, Mr. Burkhardt argued that Mr. Kalisa said that if an umbrella policy says you have or obligates an insurer to defend a case that's not covered, I mean, first of all, that's not what he said. Second of all, the coverage under the policy is determined by the language of the policy itself. It's not what any supposition of what an agent might say, especially an agent who says I'm not an expert in policy interpretation. I don't hold myself out to be. A couple other things I wanted to directly respond to Mr. Burkhardt. One is regarding the Carr case. He says Carr is almost identical. Carr is not identical. Carr is actually the opposite. What happened in Carr, the person who was sued in Carr was the party who damaged an existing property. And in Carr they said that was a distinguishing factor. The defendant in Carr was not being sued merely for repair or replacement of the defective product, which is what design is being sued for. The insurer in Carr was being sued for negligently causing damage to other existing property. And what Carr said is that that's the distinguishing factor. That is completely opposite of what's happened here. In fact, in Mr. Burkhardt's argument, he leaves out the two most important factors when you have to determine if that's the duty to defend. The specific allegations of the underlying complaint and the language of the insurance policy. And that's what you have to look at to determine whether there's a duty to defend. In this case, the complaint that was tendered to Erie Insurance, which was called the Second Amendment to the First Amendment complaint. It only alleged that Design Concrete failed to properly construct this foundation wall. There was latent defects within the wall, which caused it to buckle to crack. The only remedy that the underlying plaintiff sought from Design Concrete was the repair and replacement of that defective wall. Courts have said over and over and over again. This court said it in Tillerson. The Supreme Court set forth this standard in the Travelers v. Elgin Manufacturing case. That was a very lengthy opinion from the Supreme Court, where they discussed this particular issue. And they focused on the definition of property damage under these policies. And what they said in the Travelers case was it involves some pipes that were defectively installed into buildings. They said if the pipes leak and cause water damage to the building, you have property damage. And that's covered under a CGL policy. If the complaint only seeks the repair or replacement of those defective pipes, that is not property damage. That is an economic loss. And that is not covered under a CGL policy. The Travelers v. Elgin drew that distinction. And every court since then has filed that, including Carr, including Tillerson, which this court decided a year after Elgin, and including a number of other cases that have decided in our brief. Now, some of the cases do discuss whether it's an occurrence. Some say this is not an occurrence when you're just repairing or replacing defective pipes. Some say it's not property damage. But whether it's an occurrence, whether they use the occurrence analysis or whether they use the property damage analysis, the line of demarcation is always the same. It's always if your work causes damage to other property, then that's property damage. If the plaintiff or if you were only being accused of building a defective product and the plaintiff seeks the repair or replacement of that defective product, that is not property damage. That is exactly what took place here. That's exactly what the complaint alleges. It alleges nothing more. And the area, looking at its definition of property damage, of occurrence, obviously aware of the case law, particularly the Supreme Court decision in Traveller v. Elgin and all the many, many cases that have come out since then, which I've all cited in my brief. They say when the damage or when the alleged conduct is only building a defective product that needs to be repaired or replaced, that's not property damage. That's not government or policy. That's your contractual duty to build a proper foundation. If you didn't do it properly, you can't come to your insurance company for assistance in that. You have to repair what you did improperly. Now, there's a – so, I mean, I think, you know, absent these letters from Mr. Burgard to the insurance company, I mean, it's a clear-cut case. He attempts, I think, to money the issue by saying that, look, this damage was not caused by my client. It was caused by somebody else, somebody who was not a subcontractor of design, who didn't work for Design Concrete, a complete stranger to the insurance policy, a complete stranger to, you know, design's subcontract with the general. But that simply doesn't – that doesn't trigger coverage. Just to say that I didn't – it wasn't my fault. It was somebody else's fault. That doesn't trigger coverage. The allegations are you messed up. I mean, if you – you can deny that and say, no, I didn't mess up. But that doesn't mean it's covered under the policy. And that's – you know, and, of course, we have the issue of whether Erie was even obligated to consider this. But I suggest they're not. I suggest Pekin v. Wilson doesn't change the preexisting law on that, which says that just because an attorney for the insurer comes up with an argument in the letter and sends it to you, that you have to accept that as the truth. And that's what the Shriver case from the 2nd District, which is cited also in my brief, says exactly that thing. And then there was a question after Shriver whether Pekin v. Wilson altered that, and the 2nd District said no, Shriver's still good law on that, and even in line with Pekin v. Wilson. And they recognized, and I think the Supreme Court also recognized Pekin v. Wilson, the uniqueness of that particular case. What the plaintiff's counsel is trying to do is take Pekin v. Wilson outside of the facts of that particular case. That involved a self-defense exception to a potential act of exclusion. It involved nothing – there's nothing in this Court's opinion, nor nothing in the Supreme Court's opinion that said that they were changing the preexisting law with regards to how an insurance company must determine whether it has a duty to defend. They recognized, which had already been recognized, that in unusual and compelling circumstances, they could look outside the four corners of the insurance policy. The law prior to that said that you look outside the claim is only in unusual and compelling circumstances. The Supreme Court looked at those cases that used the test of unusual and compelling circumstances. Rather than overruling those cases, the Supreme Court says – essentially recognized those cases as still good law and said this case is an unusual or compelling circumstance because of the uniqueness of the self-defense exclusion. As this Court and the Supreme Court discussed in length, that type of exclusion is unique because typically – well, almost always – a plaintiff is not going to allege that somebody battered him, and they did it in self-defense. So the only way that that exception is triggered is in an affirmative defense. But that's not the case here. In this case, the Wallagorskys – you underline the homeowners – they could have alleged a case against A&L Construction. They could have said, okay, A&L Construction, you negligently backfilled this, and in your negligently backfilling, you busted our foundation. That would be, again, up to A&L's insurance. I would argue that's an occurrence of improper damages with regards to A&L's policy. It doesn't have any effect whatsoever on the allegations that the foundation itself was negligently – I'm sorry, not negligently, but improperly constructed and had latent effects within the foundation itself. He can argue – his client can argue that's not true, but that's what the allegations say. And that simply is not covered under this policy as recognized in Travelers v. Elder, all the cases that have come out since then. I do want to make a comment also about this ISO issue, which I'm somewhat confused about. I read the reply brief. I don't – I mean, I'm somewhat familiar with the regulation that he's citing here, whereby an insurance company has to submit its policy forms to the Department of Insurance for preapproval before they can use the forms. And from what I'm reading here, they have different options. They can have their own forms that they print up themselves and submit those, or they can use a service such as ISO or some other type of service and say, we'd like to use one of their forms, and there's different options that they can use. There's nowhere in the regulations that say that if an insurance company adopts or uses an ISO form or uses a form from some other agency, that they are bound by any type of interpretation that may be made by that particular agency. There's no principal-agent relationship between ISO and ERIE. The best evidence he has is that ERIE did admit, yes, we are a subscriber to ISO. That means we pay for their forms and their assistance in providing forms for us because we don't have the manpower to type up our own forms and have them approved. So we use ISO services. There's nothing in there that says we're bound by any interpretations that ISO may make. I would also posit that any of the interpretations that he's talking about are completely irrelevant, but that's in our brief as well. With regards to trying to argue there's a question at the back, I mean, it's just simply not the case. And most significantly, this ISO, these circulars that he's attached, which aren't verified or anything like that, but these circulars that he refers to, they have a disclaimer on there, a specific disclaimer saying ISO does not interpret insurance policies. These are for your guidance only, for the guidance, you know. We do not interpret or make any coverage analysis, or we do not involve any type of coverage opinions, coverage analysis, and recognize that laws vary from state by state. The one case that he cites is this American States v. Collins case. It's Supreme Court from 1997, which dealt with the pollution exclusion. And in that case, the insurance company, I'm sorry, the court was trying to interpret the term pollution for purposes of pollution exclusion. It looked at all the laws and found nothing, found no guidance. Looked at other states that there's competing authority on both sides.  And so in terms of big news, we can look to external sources. They looked at the history of the use of this term in the insurance industry when we reached this decision. That is not applicable here. We do not have an ambiguity. Travelers v. Elger, which came out after Collins, actually consider the same argument. They actually quote Collins in their opinion. They say, we don't need to look outside the terms of the language of policy. We don't need to look at the insurance industry, the materials that the court looked at in Collins. We don't need to do that in this case. It's clear from the policy. There's no ambiguity. And as I said before, the line of numeration is if your actions cause damage to existing property, property damage under a CGL policy, if it's a repair or replacement of your effective work, not coverage under a CGL policy. Travelers v. Elger could not be any more clear on that. And that's the exact case we have here. Does the court have any further questions? I don't believe so. All right. Thank you, Your Honor. Counsel. I believe counsel brought up something that really wasn't argued below. And I don't know that you'd find it in the record below either. But he brought up that there's no regulation that requires an insurance company to advise the Department of Insurance that they are not adopting the ISO's interpretation. I cite to the 50 Illinois Administrative Code, Section 753.1. And I was about, before the hammer hit, I was about to quote what the language in an RF1 form says. First of all, the regulation says a company authorizing the advisory organization of which it is a member or a subscriber to make the filings upon the company's behalf, and a company doing that must also file a duplicate form RF1. And this is in my reply brief. The department attaches a form of the RF1 where the company does adopt the ISO's interpretation. And basically this is what it says. The undersigned company hereby requests that it shall be deemed to have independently submitted as its own filing the manuals, rules, and or forms filed by the advisory organization, et cetera, et cetera. Absolutely there's a regulation. It's right there in the form. Now, as I point out, we didn't get to the discovery of the RF1 form. But I bet we will. But it will show that there's facts out there that basically contradict. What I did do is I alluded to earlier, I really don't know, I don't think there's a rule other than 366 which governs this. But since that time, I have found, the Illinois Department of Insurance uses this system called SERP, System for Electronic Rate Form Filing. Everything is done online. And basically, I actually have documents submitted by Erie which says, and I quote, we are filing advising we are not adopting ISO's dwelling and personal liability supplement to the dwelling program rules and forms effective 10-1. That's what I'm talking about. If you want to vary from the organization that you submit the forms for, you have to let the department know. You also have to let the, it makes sense to me. You have to let the department know what form you are going to use to cover that risk. And that's how the department maintains its oversight. So maybe I should join to supplement the record with this, but this was not submitted to the trial court. But it does prove that there are facts out there, which counsel brought up in his argument, that shows there are instances where even Erie itself advised the department, we don't want to have anything to do with ISO, they're interpreting this wrong. So I will move to supplement the record and submit this as an exhibit too. And I believe that just to the argument, if I heard it right from counsel for the defense, is that the insurer has to rely upon the draftsmanship of the plaintiff's lawyer or the plaintiff in the underlying case. That is not the situation. That's not the law. In fact, it's just the opposite. The complaint should be construed liberal to afford coverage on behalf of the insurer. If I understood the argument correctly, I'd like to know, and I pose this as a question to draw a point, what's the difference between a lawyer's letter advising a fact and an affirmative defense filed in the Wilson case by an insurer's lawyer? The source is the same. It's coming from the insurer's lawyer. I don't think there's any difference. And I think Justice Stewart, who I quote in there, in the appellate version, Pinkham v. Wilson, said that. It doesn't matter the source of the information. Once an insurance company is put on notice, certain facts are out there that indicate there would be coverage. They have a duty to investigate. Now, as far as the – I'll give you precise citations to find at the depositions testimony. For Steinkening, where he said if this damage would have been caused by another contractor, it would have been covered, look at C1075-79. As far as police talking about coverage, the citation to the record is C883, page 20. Run that past me again. What's the last number? For the police deposition, it's – page 20 of his deposition, the reference is C883. That's where it appears in the record on appeal. And just – if I may have just 10 seconds more, counsel did refer to a change to Kalisa's testimony with regard to the change in the policy. He also testified that the change is limited to the fact that he had more employees and that coverage did not change. So coverage didn't change. The language that I quote in my policy and those endorsements that my client had before would still be applicable here. And again, this is a – Well, wait. Your time is up. My time is up. I don't know what to do. Should I submit this with a supplement?  We're granting counsel leave to respond to that motion in whatever form. We're not telling you what to include or not to include. You indicated that there were certain matters prior to the time of judgment in this case that's on appeal and that perhaps you should supplement the record, and we granted you leave to do that. And we're not going to tell you what to include or not to include. So if you'll file your motion, you file your response, and we will determine the motion as well as the substance of the case. Thank you, Your Honor. Thank you. Thank you. Thank you, Your Honor. We appreciate the briefs and arguments of counsel, and we will take this case under consideration. Thank you.